**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, 424 E. 92nd Street New York, NY 10128-6804 | ) ) ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) Civil Action No. ) |
| TOM VILSACK, Secretary, United States Department of Agriculture 1400 Independence Ave., SW Washington, DC 20250 | ) ) ) ) ) |
| UNITED STATES DEPARTMENT OF AGRICULTURE 1400 Independence Ave., SW Washington, DC 20250 | ) ) ) ) ) |
| MICHAEL WATSON, Administrator, Animal and Plant Health Inspection Service 4700 River Road Riverdale, MD 20737 | ) ) ) ) ) |
| ANIMAL AND PLANT HEALTH INSPECTION SERVICE 4700 River Road Riverdale, MD 20737 | ) ) ) ) ) |
| *Defendants.* | ) |

**COMPLAINT**

1.      Plaintiff The American Society for the Prevention of Cruelty to Animals ("ASPCA") brings this action to challenge the Government's improper issuance of licenses to Steven Kruse and his agents, to have those licenses voided, and to enjoin ongoing activity that is causing substantial harm to animals which will continue if corrective measures are not taken by this Court.

1

2.      The Animal Welfare Act of 1966 ("AWA"), 7 U.S.C. §§ 2131-2160, establishes strict requirements for the thousands of dog dealers licensed by Defendant United States Department of Agriculture ("USDA").

3.      One dog dealer who has been licensed by USDA is Steven Kruse, who has his primary facility in West Point, Iowa. Steven Kruse has used his USDA license to establish a lucrative breeding scheme that sets him apart from other USDA licensees.

4.      Under this breeding scheme, Steven Kruse transfers the dogs he breeds to facilities licensed in the name of Steven Kruse's agents where the puppies remain until they are sold through various channels. The breeding mothers are then "returned" to Steven Kruse to be bred again. This cycle continues until the breeding mother no longer serves Steven Kruse's business interests. This scheme has worked because Steven Kruse installs his agents at his various facilities located throughout the State of Iowa and, once installed, Steven Kruse's agents apply for, and are granted, a USDA license to operate Steven Kruse's facility in their own name.

5.      Over the last three years, Steven Kruse has consecutively installed three separate agents at a single facility in Cantril, Iowa. The first associate ultimately served jailtime for state law animal neglect charges brought by local law enforcement stemming from violations observed by Defendants; the second cancelled his license after several failed state and federal inspections; and the latest is continuing the same pattern having failed multiple federal and state inspections that have resulted in enforcement action by the State of Iowa Department of Agriculture and Land Stewardship.

6.      To date, his scheme to launder puppies through his agents has enabled Steven Kruse to avoid regulatory enforcement and other legal action that may be taken in response to the inhumane treatment of the animals at the center of Steven Kruse's business. It also allows Steven

Kruse to circumvent state and local laws prohibiting the sale of dogs from USDA licensed breeders with a history of violating the AWA—concealing the puppy's origins from the pet purchasers at the end of Steven Kruse's puppy mill pipeline.

7.    Defendants been aware of Steven Kruse's breeding scheme and AWA violations since at least 2016.   For example, Steven Kruse threw a bag of dead puppies at a USDA inspector and has admitted that he poured hot sauce in a dog's open wound to keep the dog from licking it instead of providing basic veterinary care.

8.    By not voiding his license and the license of his agents in the face of this knowledge, Defendants have enabled the perpetuation of animal cruelty.   In one such situation, when Kruse sought to re-license his primary facility under his name in June 2022, Defendants did not even require Steven Kruse to demonstrate compliance at his primary facility.   Indeed, Defendants observed a violation of the AWA at the time of the pre-license application, but granted Steven Kruse his sought license anyway because, according to Defendants, Steven Kruse passed a second pre-license inspection that was conducted the same day.

9.    After renewing Steven Kruse's license, Defendants continued to observe egregious violations of the AWA at Steven Kruse's primary facility in West Point, Iowa — none of which have resulted in enforcement action.

10.    By perpetuating this egregious situation, Defendants have violated their own regulations, sanctioned Steven Kruse's puppy laundering scheme, and acted contrary to law in an arbitrary and capricious manner in violation of the Administrative Procedures Act.

11.    Accordingly, upon completion of the requested review, ASCPA requests that this Court (a) declare that all USDA licenses issued to Steven Kruse and the agents with whom he works be voided and not permitted to be renewed.

3

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 1331.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(e)(1).  This is a civil action against executive entities of the United States, which reside in this judicial district, and a substantial part of the acts and omissions giving rise to this action occurred in this judicial district.

## PARTIES

### A.     Plaintiff ASPCA

14.     Plaintiff ASPCA is a not-for-profit corporation that the New York State legislature incorporated in 1866 by a special act.  The ASPCA's mission is to provide effective means for the prevention of cruelty to animals throughout the United States.  ASPCA is North America's oldest humane organization, and one of the largest in existence today, with millions of supporters nationwide.

15.     Plaintiff ASCPA brings this action on its own behalf because the challenged conduct involving the license issued and reissued to Steven Kruse and his agents directly conflicts with, impairs, and frustrates Plaintiff's organizational mission and has required Plaintiff to divert and redirect its limited resources to monitor, counteract, and offset Defendants' unlawful conduct and omissions.

16.     To fulfill its mission, Plaintiff spends substantial resources each year advocating on behalf of animals in breeding facilities. Plaintiff solicits and investigates complaints about animal cruelty submitted by the public. Plaintiff uses its website, publications, and the media to disseminate information to its members and the public about government actions affecting animals, including animals who are bred at facilities like those at issue here. Plaintiff routinely sends submissions to the government concerning the treatment of animals at breeding facilities, and

4

Plaintiff responds to requests for public comment from the government concerning animal welfare issues.

17.     By issuing licenses to applicants that are in violation of the AWA, specifically the applicants at issue here, the USDA allows the breeding of animals under conditions that do not meet the minimum standards of care and treatment set forth under the AWA and are, by definition, inhumane. The USDA's illegal actions thus increase the number of animals that are bred under unlawful conditions and are subjected to inhumane care and treatment, and thereby compels the ASPCA to spend more resources detecting, disclosing, educating the public about, and bringing to the agency's attention, these non-compliant facilities.

18.     Plaintiff has expended financial resources to monitor and evaluate the condition and status of animals bred by Steven Kruse and his agents, due to Defendants' lack of oversight over Steven Kruse and his agents. Plaintiff has additionally expended resources to inform the public and policy makers about Defendants' unlawful conduct and obtain appropriate and necessary relief for the animals harmed by Steven Kruse's breeding scheme through advocacy efforts.

19.     Plaintiff has assisted the Animal Rescue League of Iowa ("ARL") with the rescue and placement of over 500 dogs and puppies found suffering at a facility licensed in the name one of Steven Kruse's agents. As a result, Plaintiff ASCPA was forced to divert over two hundred and fifty thousand dollars ($250,000) to the rescue effort which included costs associated with removing dogs from the facility, transportation, veterinary care, rehabilitative services and placement.

20.     As a result of Defendants' unlawful licensing of Steven Kruse and his agents, Plaintiff ASCPA has been forced to appeal to other agencies and to lawmakers in effort to ensure

the humane treatment of dogs covered under the AWA.  Were Defendants faithfully executing the duties assigned to them by statute, Plaintiff ASPCA would not be required to incur these costs.

21.     Plaintiff ASPCA has also spent significant time and resources receiving, investigating, and submitting complaints to Defendants regarding Steven Kruse's breeding scheme and inhumane treatment of animals. These should be costs borne not by Plaintiff ASPCA but by Defendants, who have the statutory responsibility to receive, investigate and respond to complaints about unlawful conduct by licensed dog dealers.

22.     For example, on May 17, 2022, Plaintiff submitted a complaint to Defendants about Kruse's unlawful breeding scheme, highlighting that Kruse's extensive history of violations makes him unfit to hold a license.

23.     On September 23, 2022, Plaintiff submitted a second complaint to Defendants about Kruse's unlawful breeding scheme, highlighting 1) Defendants failure to take action in response to Plaintiff's previous complaint, 2) that Defendants have allowed Kruse to continue violating the AWA with impunity which has resulted in animal suffering, 3) Defendant's inexplicable decision to relicense Kruse.

24.     On April 11, 2023, Plaintiff submitted a third complaint to Defendants about Kruse's unlawful breeding scheme, highlighting 1) Defendant's failure to inspect the Kruse facility licensed in Brian Lichirie's name and Defendants failure to confiscate animals found suffering despite suspending Kruse's license.

25.     On January 26, 2024, the Plaintiff submitted a fourth complaint to Defendants about Kruse's unlawful breeding scheme highlighting 1) that animals housed at the Kruse facility in Swedlund's name are, according the agency records, in serious danger, and 2) the approval of Swedlund's license is contrary to federal law.

26.    These activities, which were not part of Plaintiff ASPCA's normal annual expenditures until the efforts became necessary due to USDA's clear abdication of its statutory responsibility, have caused a consequent drain on the organization's resources.

27.    Plaintiff's normal process of submitting complaints to the USDA regarding violations of the AWA documented at the facilities at issue in this complaint is hindered by the USDA's arbitrary and capricious decision-making. By ignoring evidence of noncompliance with the AWA, the USDA significantly limits the effectiveness of Plaintiff's normal process of submitting complaints to the USDA.

28.    The ASPCA has been and will continue to be harmed by the USDA's decisions to issue the AWA licenses of Steven Kruse, Brian Lichirie, and Wuanita Swedlund despite chronic and ongoing violations of the AWA. By issuing licenses to these applicants despite evidence that these applicants confine animals to conditions that violate the AWA, the USDA causes the ASPCA to spend additional resources monitoring, documenting, and addressing the unlawful licensing decisions and the inhumane conditions at the applicants' facilities.

**B.    Defendants**

29.    Defendant Tom Vilsack is the Secretary of the United States Department of Agriculture ("USDA") and is named as a defendant in this action in his official capacity as Secretary.

30.    Defendant USDA is an agency of the United States Government, located at 1400 Independence Ave., SW, Washington, DC 20250. It is the federal agency responsible for, among other things, promulgating standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors, as well as the licensing of those dealers and exhibitors. *See* 7 U.S.C.A. §§ 2133, 2134; 7 U.S.C.A. § 2143.

31.     Defendant The Animal and Plant Health Inspection Service ("APHIS") is an agency of the United States Government within USDA, located at 4700 River Road, Riverdale, MD 20737. APHIS is responsible for enforcing regulations under the Animal Welfare Act, including those relevant to licensing, attending veterinarian care, and handling of animals. 9 C.F.R. §§ 2.1 – 2.153.

32.     Defendant Michael Watson is the Administrator of APHIS and is named as a defendant in this action in his official capacity as Administrator.

## FACTUAL ALLEGATIONS

### A.      The Animal Welfare Act

33.     The AWA requires the USDA Secretary to promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors, including in relevant part, minimum standards for handling, housing, feeding, watering, sanitation, ventilation, shelter from extremes of weather and temperatures, adequate veterinary care, and separation by species where the USDA Secretary finds necessary for humane handling, care, or treatment of animals; and for exercise of dogs, as determined by an attending veterinarian in accordance with general standards promulgated by the Secretary.  7 U.S.C. § 2143.

34.     Pursuant to their statutory mandate, Defendants established specific requirements for the housing of dogs generally, including standards for sheltered housing facilities, outdoor housing facilities, mobile or traveling housing facilities, and primary enclosures. 9 C.F.R. § 3.1-3.7.

35.     In pertinent part, these regulations:

(a) include detailed standards for structure, surfaces, maintenance, cleaning, water and electric power, storage, drainage and waste disposal, ventilation, lighting, heating, cooling,

and temperature, and shelter from the elements, and compatibility.  *Id.*

(b) establish specific requirements for exercise of dogs, feeding, watering, cleaning, sanitation, housekeeping and pest control, and employees.  9 C.F.R. § 3.6-3.12.

(c) require dog dealers to provide adequate veterinary care, including each dog dealer to establish and maintain a program of adequate veterinary care.  9 C.F.R § 2.40.

(d) mandate that each dog dealer "shall comply in all respects with the regulations and standards set forth for the humane handling, care, treatment, and housing of animals."  9 C.F.R. § 2.100.

36.     In relevant part, the AWA also establishes the procedure to license dog dealers, to ensure that animals intended for use as pets are provided humane care and treatment, and to assure the humane treatment of animals during transportation in commerce. 7 U.S.C. §§ 2131, 2133.

37.     The AWA further requires Defendants to make such investigations or inspections as they deem necessary to determine whether any dog dealers have violated or are violating the AWA or the Regulations.  7 U.S.C. § 2146.  To this end, Defendants retain the right to access regulated facilities, animals, and records required to be kept pursuant to the AWA.  *Id.*  And, any person who forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person while engaged in or on account of the performance of his official duties under AWA shall be fined not more than $5,000, or imprisoned, not more than three years, or both.  *Id.*

### B.     Licensing under AWA

38.     Under the current regulations, AWA licenses are valid for a period of 3 years (9 C.F.R § 2.5), and each applicant for license must be inspected and demonstrate compliance with the AWA and its governing regulations and standards before a license will issue.  9 C.F.R § 2.3.

39.    The implementing regulations require that, no person shall have more than one license. 9 C.F.R § 2.1(b)(1).

40.    The implementing regulations provide that "[e]ach applicant for a license must demonstrate that his or her location(s) and any animals, facilities, vehicles, equipment or other locations used or intended for use in the business" comply with the AWA and the implementing regulations and standards." 9 C.F.R § 2.3(a).

41.    The implementing regulations also provide that "the failure of any person to comply with any provision of the AWA, or any of the provisions of the regulations or standards" promulgated pursuant to the AWA "shall constitute grounds for denial of the license" application. 9 C.F.R § 2.1(d).

42.    A license will not be issued to any applicant who:

(1) Has not complied with the requirements of §§ 2.1 through 2.4 and has not paid the fees indicated in § 2.1;

(2) Is not in compliance with the Act or any of the regulations or standards in this subchapter; …

(4) Was an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9;

9 C.F.R. § 2.11(a)(1)-(2), (4).

43.    If there is a violation of the AWA by a licensee, by statute, the USDA Secretary is directed to impose the following penalties: (1) revocation of the dog dealer's license; (2) suspension of a dog dealers license temporarily, for a period of 21 days; (3) issuance of an order that a person in violation shall cease and desist from continuing such violation; and (4) assessment

10

of a civil monetary penalty of not more than $10,000 against any dealer. 7 U.S.C. § 2149 (a), (b).

### C.    Improper Licensing of Steven Kruse

44.    The USDA granted Steven Kruse's initial license application on August 6, 1993 and never revoked Steven Kruse's license between 1993 and 2021 despite repeated violations of 9 C.F.R. § 3.1-3.12 , 9 C.F.R § 2.40, and 9 C.F.R. § 2.100.

45.    On August 17, 2022, Steven Kruse applied for a new three year license.

46.    While the agency was considering Steven Kruse's license issued on August 17, 2022, the agency had records of multiple violations.

47.    At a March 29, 2022 inspection, Defendants recorded the following violations:

   a.   Violation of 9 C.F.R § 2.40(b)(2), for a failure to provide adequate veterinary care. Defendants observed a Mini Golden-Doodle with an abnormal skin condition, a Bulldog with a cyst on her hindfoot, and a Pomeranian with poor dental health.

   b.   Violation of 9 C.F.R § 2.131(b)(1), for improper handling of multiple animals. Defendants observed, among other violations, at least 16 dogs with toenails trimmed so short they were actively bleeding and blood trailed down the floors of the enclosures and the walkways beyond.

48.    At a June 22, 2022 inspection, Defendants recorded the following violation:

   Violation of 9 C.F.R § 2.40(b)(2), for a failure to provide adequate veterinary care. Defendants observed, among other violations, at least two dogs that were lame, unable to walk, with open lesions on their hind legs.

49.    At an August 17, 2022 inspection, Defendants recorded the following violations:

   a.   Violation of 9 C.F.R § 2.40(b)(2), for a failure to provide adequate veterinary care. Defendants observed three dogs that were limping with lesions or growths on their feet, and two dogs that had liquid diarrhea and discharge from their noses, none of whom had been treated for these conditions.

   b.   Violation of 9 C.F.R § 3.1(c)(1)(ii), for failure to provide proper housing facilities. Defendants observed an enclosure with two screws protruding from the bottom of the gate, allowing a dog to come into direct contact with the screws and cause injury.

50.     Since August 17, 2022, Defendants became aware of additional violations.

51.     At a December 13, 2022 inspection, Defendants recorded the following violations:

a.  Violation of 9 C.F.R § 2.40(b)(2), for a failure to provide adequate veterinary care. Defendants observed, among other violations, two dogs with greasy brown material coming out of their ears, a Boston Terrier with heavy buildup of hard, thick material encasing 50-80% of all the teeth on both sides of her mouth, a Bernese Mountain Dog with red eyes and green mucous discharge coming from both eyes, a Victorian Bulldog with large swelling on her abdomen that the Veterinary Medical Officer  believed could be a hernia, and various other injured or diseased dogs.

b.  Violation of 9 C.F.R § 3.1(c)(1)(ii), for failure to provide proper housing facilities. Defendants observed cracked plastic on the enclosure floor exposing a sharp edge, and broken and frayed wood and an exposed screw in another enclosure.

c.  Violation of 9 C.F.R § 3.6(a)(2)(x), for failure to provide proper primary enclosures. Defendants observed an enclosure housing three small Maltese dogs, and observed that the legs of the smallest dog fell through the holes in the flooring multiple times.

d.  Violation of 9 C.F.R § 3.9(b), for improper feeding. Defendants observed improperly covered dog food, causing multiple pieces of discarded dog food to become wet, and accumulate mold and cake together at the bottom of the food receptacle.

e.  Violation of 9 C.F.R § 3.13(b)(2), for failure to keep records of veterinary care. Defendants observed a Pomsky and Cavalier with matted hair coats, a Bulldog with excessively dirty ears, and a failure to record treatment for a skin condition for a Bulldog.

52.     At a March 7, 2023 inspection, Defendants recorded the following violations:

a.  Violation of 9 C.F.R § 2.40(b)(2), for a failure to provide adequate veterinary care. Defendants observed multiple severe veterinary care issues, with 12 dogs listed with injuries, diseases, or conditions that had not been noticed or treated. Defendants observed a Bernese mountain dog that was actively bleeding from a wound in her abdomen between the mammary glands from a surgical artificial insemination.

b.  Violation of 9 C.F.R § 3.13(b)(2), for a failure keep records of veterinary care. Defendants observed at least five dogs with matted hair coats, and five dogs were identified with poor dental health.

53.     At a March 14, 2023 inspection, Defendants recorded the following violations:

    a.  Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed a Shiba Inu with poor dental health, including think hard brown tartar covering all of the check tenth and most of the surface of canine and front teeth, and a Poodle with loose teeth that moved easily when touched.

    b.  Violation of 9 C.F.R § 3.13(b)(2), for a failure to keep records of veterinary care. Defendants observed two adult dogs who were identified as under medical treatment, but there were no records of medications or diet modifications for those dogs.

54.     At an April 19, 2023 inspection, Defendants recorded the following violation:

    Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed, among other violations at Kruse's facility, thirteen dogs that had not been receiving adequate veterinary care, including cloudy eye conditions, severe dental disease, lesions on skin, and difficulty walking.

55.     At a May 9, 2023 inspection, Defendants recorded the following violations:

    a.  Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed four dogs with abnormal conditions of their eyes.

    b.  Violation of 9 C.F.R § 3.6(a)(2)(x), for improper primary enclosures. Defendants observed dangerous housing enclosures with thirteen dogs whose feet could pass through openings in the raised floors of their housing enclosures.

56.     And, prior to all of those instances, the agency had knowledge of previous violations.

57.     At a December 16, 2015 inspection, Defendants recorded the following violations:

    a.  Violation of 9 C.F.R § 2.4(d), for interference with APHIS officials. Kruse threw a clear plastic bag containing two dead puppies at inspectors, prompting them to leave immediately.

    b.  Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed a King Charles Cavalier with an abrasion on her skin with fresh blood, and a black crust on the surface, as well as a Shiba Inu with a loose knee who was not bearing weight on her left hind leg. The on-site veterinarian and facility representative had no prior medical documentation regarding these problems.

13

    c.  Violation of 9 C.F.R § 3.1(c)(2), for improper housing facilities. Defendants observed multiple areas requiring maintenance including enclosures that were excessively chewed and scratched, flooring with broken wires, flooring that was rusty, bent, or broken, and multiple enclosures with sharp points protruding.

58.    At an April 10, 2017 inspection, Defendants recorded the following violation:

    Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Kruse was found to be putting hot sauce on a dog's open wound to prevent her from licking it.

59.    At a December 10, 2019 inspection, Defendants recorded the following violations:

    a.  Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed at least 6 dogs that had lameness in their leg, inflammation in their foot, an abnormal appearance when they walked or failure to bear weight on their limb at all.

    b.  Violation of 9 C.F.R § 3.1(c)(1)(ii), for improper housing facilities. Defendants observed an enclosure with two adult dogs that had an arrow-shaped point protruding from the bottom of the enclosure.

60.    At a March 24, 2020 inspection, Defendants recorded the following violation:

    Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants recorded a repeat violation for a Mini-Golden Doodle that had hair loss, as well as moist and reddened skin around her eye with brown crusted material. Kruse failed to treat the dog's condition and the dog had not been evaluated by a veterinarian.

61.    At a March 11, 2021 inspection, Defendants recorded the following violations:

    a.  Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed, among other violations, a Wheaton with poor dental heath including a broken tooth, excessive saliva, dark brown colored teeth, and red gums, an emaciated Boston with backbone, ribs, and hip bones visible and "little fat and muscle" covering them, a Bulldog with an abnormal leg condition preventing them from bearing weight on it, a Samoyed with red gums and discolored teeth showing a "pain response" when her eye was touched, a Husky with a protruding eye and swollen tissue, and a matted Wheaton with matts "thickened and tight."

    b.  Violation of 9 C.F.R § 3.7, for incompatible grouping. Defendants observed that Kruse failed to provide compatible housing for a four-month-old puppy housed with an adult dog, where inspectors observed the adult dog acting aggressively and growling at the puppy when he approached the food.

62.     At a May 17, 2021 inspection, Defendants recorded the following violation:

> Violation of 9 C.F.R § 2.40(b)(2), for failure to provide adequate veterinary care. Defendants observed, among other violations, a dog with poor dental health, with its teeth encased in a dark brown color material with "grey, milky, pus-like material" located along the gum line, a dog with thick yellow to brown colored material on its teeth and red gums, a dog with an abnormal appearance to her face with complete hair loss, dry and crusty skin, and inflammation with eye discharge, and a dog with an abnormal leg condition who could not bear weight on the leg with lower leg inflammation.

63.     According to agency records, between 2014 and 2023 alone, Defendants documented 45 violations of the AWA during inspections at Steven Kruse's primary facility.

64.     By virtue of these inspections, Defendants had knowledge of Steven Kruse's repeated violations of the AWA.

65.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by issuing a license to Steven Kruse on August 17, 2022, despite Defendants' knowledge that Kruse was not in compliance with multiple regulations and standards, specifically 9 C.F.R § 2.3(a), 9 C.F.R § 2.40(b)(2), 9 C.F.R § 1.131(b)(1), and 9 C.F.R § 3.1(c)(1)(ii).

66.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by failing to revoke Steven Kruse's license, despite Defendants' knowledge that Kruse was not in compliance with multiple regulations and standards, specifically 9 C.F.R § 2.3(a), 9 C.F.R § 2.40(b)(2), 9 C.F.R § 1.131(b)(1), and 9 C.F.R § 3.1(c)(1)(ii).

67.     Upon information and belief, Steven Kruse's license remains intact despite existing violations of the AWA.

**D.      Kruse's Breeding Scheme and Agents**

68.     Steven Kruse owns hundreds of acres of land throughout the State of Iowa with various facilities from which Kruse and his agents operate.

15

69.     Hundreds of dogs and puppies occupy these facilities at any given time.

70.     These dogs and puppies are regularly transferred between Steven Kruse and his agents without documentation.

71.     Steven Kruse's agents include, among others, Wuanita Swedlund and Brian Lichirie.

72.     Steven Kruse allocates his various facilities and the dogs housed in those facilities among himself and his agents.

73.     On November 10, 2015, Steven Kruse informed Defendants of his planned breeding scheme.

74.     On January 20, 2016, Director of Animal Welfare for Operations for Defendants, Dr. Robert Gibbons, confirmed Defendants understanding of Steven Kruse's breeding scheme in written correspondence, stating:

> My understanding is that you intend to sell bred female dogs to licensed breeders who will then sell the puppies; after puppies are weaned you will re-acquire the female dogs, breed them, and resell the bred females to licensed breeders. You indicated in your correspondence that **you have sold or rented buildings on your premise to other licensees and that these buildings will be used to whelp some of the aforementioned bred female dogs**.

75.     Dr. Gibbons then informed Kruse that he and his agents must seek and obtain a single USDA license, rather than multiple individual licenses for each person:

> In this business model you will be working in concert with others to conduct covered dealer activity; as such, **this group of individuals will need to become a licensed entity**. Licenses are issued to specific persons for specific premises and are not valid at a different location or when the person conducting the business changes. Therefore, **prior to conducting regulated activity in this manner this group must apply for single license under the Animal Welfare Act** with Animal Care and successfully undergo the pre-license process.

76.     Despite this instruction, Kruse and his agents did not apply for a single license at any time.

77.     Kruse's agents, Wuanita Swedlund and Brian Lichirie, should not have been permitted to obtain independent licenses because they are operating on land owned by Kruse and operate in facilities owned by Kruse, or in facilities leased or purchased from Kruse.

78.     To date, Kruse and his agents have never applied for a single license.

79.     To date, Defendants have never required Steven Kruse and his agents to obtain a single license, despite having knowledge that Kruse and his agents operating in the above-described manner.

80.      Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of  5 U.S.C. § 706(2)(A), by issuing licenses to Wuanita Swedlund and Brian Lichirie, despite Defendants' knowledge that Kruse and his agents are required to operate under a single license pursuant to 9 C.F.R § 2.1(b)(1).

**E.     Brian Lichirie**

81.     On or around February 26, 2020, Defendants licensed nine buildings in the name of Steven Kruse associate, Kruse's nephew, Brian Lichirie.

82.     Defendants licensed these buildings in Brian Lichirie's name, despite knowledge that Steven Kruse owned the surrounding property, and owned the dogs in Brian Lichirie's facility.

83.     On December 12, 2020, Kelly Maxwell, an APHIS employee, sent an internal message to other APHIS employees, stating, "I actually did go to Brian Lichirie's (Handles the puppy part of Steve's business) . . . ."

84.     On September 28, 2022, Kelly Maxwell emailed other several other APHIS employees stating, "The dogs are moved to a different license (Brian Lichirie) to whelp & the puppies are sold from that license & then the females are returned to Steve's license. So, Steve very rarely has any puppies during his inspections."

17

85.     On December 14, 2022, Kelly Maxwell stated in a declaration "Mr. Lichirie is also one of Mr. Kruse's employees, and he is responsible for the whelping female dogs, caring for the puppies, and then selling them to the broker. Once the litters reach the appropriate weaning ages, Mr. Lichirie transfers the adult female dogs back to Mr. Kruse's facility." Kelly Maxwell additionally stated, "Mr. Lichirie. . . [was] the facility representative[] for these inspections [at Mr. Kruse's facility]."

86.     On December 28, 2023, Paige Johnson (another APHIS employee) took a photograph of a whiteboard during an inspection at Wuanita Swedlund's facility where she "keeps track of dog breedings and heat cycles." The whiteboard had notes next to the names of particular dogs, for example, a dog named snowball was at "Steve's place … Bred 2/12" and another dog named Ellie has a note next to it indicating "Brian 12-6, 12-9."

87.     Defendants issued a license to Brian Lichirie despite knowledge that Brian Lichirie was an officer, agent, or employee of Steven Kruse, and knowledge that Brian Lichirie participated in the activity warranting revocation of Steven Kruse's license.

88.     Defendants subsequently failed to terminate Brian Lichirie's license despite knowledge that Brian Lichirie was an officer, agent, or employee of Steven Kruse, and knowledge that Brian Lichirie participated in the activity warranting revocation of Steven Kruse's license.

89.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by issuing a license to Brian Lichirie, as Defendants had knowledge that Brian Lichirie was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

90.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by failing to terminate Brian Lichirie's license, as Defendants

had knowledge that Brian Lichirie was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

F.   **Wuanita Swedlund**

91.   On or around July 14, 2023, Defendants licensed another Kruse associate, Wuanita Swedlund.

92.   Defendants licensed Steven Kruse's facility in Cantril, Iowa, in Wuanita Swedlund's name, despite knowledge that Steven Kruse owned the property and the dogs in the facility.

93.   On December 21, 2023, an inspection report from Defendants provided "Dogs are regularly transported between this facility and [Steven Kruse's facility] without documentation."

94.   On December 28, 2023, Paige Johnson (another APHIS employee) took a photograph of a whiteboard during an inspection at Wuanita Swedlund's facility where she "keeps track of dog breedings and heat cycles." The whiteboard had notes next to the names of particular dogs, for example, a dog named snowball was at "Steve's place … Bred 2/12" and another dog named Ellie has a note next to it indicating "Brian 12-6, 12-9."

95.   On January 26, 2024, Robert Hensley wrote to Defendants stating, "As USDA is aware, Swedlund's operation is located  . . . in Cantril, Iowa [and] is owned by Steve Kruse who holds a Class B license.. . . USDA knows that Kruse owns the land and dogs, and continues to control the business dealings of the Cantril operation; USDA staff routinely referred to Cantril as 'Steve's' or 'Kruse's' . . . ."

96.   Defendants issued a license to Wuanita Swedlund, despite knowledge that Wuanita Swedlund was an officer, agent, or employee of Steven Kruse, and knowledge that Wuanita Swedlund participated in the activity warranting revocation of Steven Kruse's license

97.     Defendants failed to terminate Wuanita Swedlund's license despite knowledge that Wuanita Swedlund was an officer, agent, or employee of Steven Kruse, and knowledge that Wuanita Swedlund participated in the activity warranting revocation of Steven Kruse's license.

98.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by issuing a license to Wuanita Swedlund, as Defendants had knowledge that Wuanita Swedlund was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked

99.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by failing to terminate Wuanita Swedlund's license, as Defendants had knowledge that Wuanita Swedlund was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

## COUNT ONE

**(Defendants' decision to issue a license to Steven Kruse is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

100.    Paragraphs 1 through 99 are incorporated by reference as if fully set forth herein.

101.    Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are either "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "unsupported by substantial evidence."

102.    The AWA provides that "[e]ach applicant for a license must demonstrate that his or her location(s) and any animals, facilities, vehicles, equipment or other locations used or intended for use in the business" comply with the AWA and the implementing regulations and standards. 9 C.F.R § 2.3(a).

103.    The AWA also provides that "[a] license will not be issued to any applicant who (1) [h]as not complied with the requirements of §§ 2.1 through 2.4 and has not paid the fees indicated in § 2.1; [or] (2) [i]s not in compliance with the Act or any of the regulations or standards in this subchapter…" 9 C.F.R § 2.11(a)(1)-(2).

104.    The AWA additionally provides that "[h]andling of all animals shall be done as expeditiously and carefully as possible in a manner that does not cause trauma, overheating, excessive cooling, behavioral stress, physical  harm, or unnecessary discomfort." 9 C.F.R § 2.131(b)(1).

105.    The AWA further provides that each dealer "shall have an attending veterinarian who shall provide adequate veterinary care to its animals" and "shall establish and maintain programs of adequate veterinary care." 9 C.F.R § 2.40(a)-(b).

106.    And the AWA provides that "[i]interior surfaces that come into contact with dogs or cats must…. Be free of jagged edges or sharp points that might injure the animals." 9 C.F.R § 3.1(c)(1)(ii).

107.    While Defendants were considering Steven Kruse's license issued on August 17, 2022, the agency had records of multiple violations.

108.    At a March 29, 2022 inspection, Defendants observed multiple violations, including:

   a.  A Mini Golden-Doodle with an abnormal skin condition, a Bulldog with a cyst on her hindfoot, and a Pomeranian with poor dental health. *See* Exhibit.

   b.  At least 16 dogs with toenails trimmed so short they were actively bleeding and blood trailed down the floors of the enclosures and the walkways beyond.

109.    At a June 22, 2022 inspection, Defendants recorded the following violation:

   At least two dogs that were lame, unable to walk, with open lesions on their hind legs.

21

110.    At an August 17, 2022 inspection, Defendants recorded the following violations:

   a.   Three dogs that were limping with lesions or growths on their feet, and two
        dogs that had liquid diarrhea and discharge from their noses, none of whom had
        been treated for these conditions.

   b.   An enclosure with two screws protruding from the bottom of the gate, allowing
        a dog to come into direct contact with the screws and cause injury.

111.    Defendants were aware of these multiple existing violations of the AWA at the time

Defendants issued a license to Steven Kruse on August 17, 2022.

112.    The AWA prohibited Defendants from issuing a license where the applicant "has

not complied with the requirements of §§ 2.1-2.4" or "is not in compliance with the Act or any of

the regulations or standards of this subchapter." 9 C.F.R § 2.11(a)(1)-(2).

113.    Defendants acted arbitrarily and capriciously, and with an abuse of discretion in

violation of 5 U.S.C. § 706(2)(A), by issuing a license to Steven Kruse on August 17, 2022, despite

Defendants' knowledge that Kruse was not in compliance with multiple regulations and standards,

specifically 9 C.F.R § 2.3(a), 9 C.F.R § 2.40(b)(2), 9 C.F.R § 1.131(b)(1), and 9 C.F.R §

3.1(c)(1)(ii).

## COUNT TWO

**(Defendants' failure to terminate Steven Kruse's license is arbitrary, capricious,
an abuse of discretion, or otherwise not accordance with law in violation of the
Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

114.    Paragraphs 1 through 113 are incorporated by reference as if fully set forth herein.

115.    Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court

shall "hold unlawful and set aside agency action, findings and conclusions" that are either

"arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or

"unsupported by substantial evidence."

116.    The AWA provides that "a license may be terminated for any reason that a license application may be denied pursuant to § 2.11." 9 C.F.R § 2.12.

117.    The AWA additionally provides that "[a] license will not be issued to any applicant who: (1) [h]as not complied with the requirements of §§ 2.1 through 2.4 and has not paid the fees indicated in § 2.1; [or] (2) [i]s not in compliance with the Act or any of the regulations or standards in this subchapter…" 9 C.F.R § 2.11(a)(1)-(2).

118.    The AWA additionally provides that:

a.   "Handling of all animals shall be done as expeditiously and carefully as possible in a manner that does not cause trauma, overheating, excessive cooling, behavioral stress, physical harm, or unnecessary discomfort." 9 C.F.R § 2.131(b)(1);

b.   Each dealer "shall have an attending veterinarian who shall provide adequate veterinary care to its animals" and "shall establish and maintain programs of adequate veterinary care." 9 C.F.R § 2.40(a)-(b);

c.   "Interior surfaces that come into contact with dogs or cats must…. Be free of jagged edges or sharp points that might injure the animals." 9 C.F.R § 3.1(c)(1)(ii);

d.   "Primary enclosures must be constructed and maintained so that they… Have floors that are constructed in a manner that protects the dogs' and cats' feet and legs from injury, and that, if of mesh or slatted construction, do not allow the dogs' and cats' feet to pass through any openings in the floor" 9 C.F.R § 3.6(a)(2)(x);

e.   "Self-feeders may be used for the feeding of dry food. If self-feeders are used, they must be kept clean and must be sanitized in accordance with § 3.11(b) of this subpart. Measures must be taken to ensure that there is no molding, deterioration, and caking of feed." 9 C.F.R § 3.9(b);

f.   "Dealers, exhibitors, and research facilities must keep copies of medical records for dogs and make the records available for APHIS inspection. These records must include… If a problem is identified (such as a disease, injury, or illness), the date and a description of the problem, examination findings, test results, plan for treatment and care, and treatment procedures performed, when appropriate" 9 C.F.R § 3.13(b)(2).

119.    After issuing a license to Steven Kruse on August 17, 2022, Defendants documented multiple violations of the Animal Welfare Act.

120.    At a December 13, 2022 inspection, Defendants observed multiple violations, including:

   a. Two dogs with greasy brown material coming out of their ears, a Boston Terrier with heavy buildup of hard, thick material encasing 50-80% of all the teeth on both sides of her mouth, a Bernese Mountain Dog with red eyes and green mucous discharge coming from both eyes, a Victorian Bulldog with large swelling on her abdomen that the Veterinary Medical Officer believed could be a hernia, and various other injured or diseased dogs.

   b. Cracked plastic on the enclosure floor exposing a sharp edge, and broken and frayed wood and an exposed screw in another enclosure.

   c. An enclosure housing three small Maltese dogs, and observed that the legs of the smallest dog fell through the holes in the flooring multiple times.

   d. Improperly covered dog food, causing multiple pieces of discarded dog food to become wet, and accumulate mold and cake together at the bottom of the food receptacle.

   e. A Pomsky and Cavalier with matted hair coats, a Bulldog with excessively dirty ears, and a failure to record treatment for a skin condition for a Bulldog.

121.    At a March 7, 2023 inspection, Defendants observed multiple violations, including:

   a. Multiple severe veterinary care issues, with 12 dogs listed with injuries, diseases, or conditions that had not been noticed or treated. Defendants observed a Bernese mountain dog that was actively bleeding from a wound in her abdomen between the mammary glands from a surgical artificial insemination.

   b. At least five dogs with matted hair coats, and five dogs were identified with poor dental health.

122.    At a March 14, 2023 inspection, Defendants recorded the following violations:

   a. A Shiba Inu with poor dental health, including think hard brown tartar covering all of the check tenth and most of the surface of canine and front teeth, and a Poodle with loose teeth that moved easily when touched.

b.   Two adult dogs who were identified as under medical treatment, but there were no records of medications or diet modifications for those dogs.

123.   At an April 19, 2023 inspection, Defendants recorded the following violation:

a.   Thirteen dogs that had not been receiving adequate veterinary care, including cloudy eye conditions, severe dental disease, lesions on skin, and difficulty walking.

124.   At a May 9, 2023 inspection, Defendants recorded the following violations:

a.   Four dogs with abnormal conditions of their eyes.

b.   Dangerous housing enclosures with thirteen dogs whose feet could pass through openings in the raised floors of their housing enclosures.

125.   After issuing a license to Steven Kruse on August 17, 2022, Defendants became aware of these multiple violations of the AWA.

126.   The AWA provides that Defendants should terminate a license where the applicant "(1) [h]as not complied with the requirements of §§ 2.1 through 2.4 and has not paid the fees indicated in § 2.1; [or] (2) [i]s not in compliance with the Act or any of the regulations or standards in this subchapter… ." 9 C.F.R § 2.11(a)(1)-(2).

127.   Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of  5 U.S.C. § 706(2)(A), by failing to terminate Steven Kruse's license, despite Defendants' knowledge that Kruse was not in compliance with multiple regulations and standards, specifically 9 C.F.R § 2.3(a), 9 C.F.R § 2.40(b)(2), 9 C.F.R § 1.131(b)(1), and 9 C.F.R § 3.1(c)(1)(ii).

## COUNT THREE

**(Defendants' decision to issue multiple licenses to Steven Kruse and his agents, despite knowledge that they were required to obtain a single license, is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

128.   Paragraphs 1 through 127 are incorporated by reference as if fully set forth herein.

25

129.     Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are either "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "unsupported by substantial evidence."

130.     The AWA provides that "[n]o person shall have more than one license." 9 C.F.R § 2.1(b)(1).

131.     Defendants were aware that Steven Kruse, through his agents, had obtained multiple licenses.

132.     On November 10, 2015, Steven Kruse informed Defendants of his planned breeding scheme.

133.     On January 20, 2016, the Director of Animal Welfare for Operations for Defendants, Dr. Robert Gibbons, informed Steven Kruse that he and his agents must seek and obtain a single USDA license, rather than multiple individual licenses for each person.

134.     Despite this instruction, Mr. Kruse and his agents did not apply for a single license at any time.

135.     Defendants were aware that Steven Kruse's agents, Wuanita Swedlund and Brian Lichirie, were operating on land owned by Steven Kruse and operating in facilities owned by Steven Kruse, or in facilities leased or purchased from Steven Kruse.

136.     The AWA prohibits Defendants from issuing multiple licenses to a single individual. 9 C.F.R § 2.1(b)(1).

137.     Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of  5 U.S.C. § 706(2)(A), by issuing licenses to Wuanita Swedlund and Brian Lichirie,

despite Defendants' knowledge that Kruse and his agents are required to operate under a single license pursuant to 9 C.F.R § 2.1(b)(1).

## COUNT FOUR

**(Defendants' decision to issue a license to Brian Lichirie, despite knowledge that he is agent of Steven Kruse, is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

138.    Paragraphs 1 through 137 are incorporated by reference as if fully set forth herein.

139.    Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are either "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "unsupported by substantial evidence."

140.    The AWA provides that a license will not be issued to any applicant who "[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4).

141.    At the time Defendants licensed Brian Lichirie, Defendants were aware that Steven Kruse owned the surrounding property, and owned the dogs in Brian Lichirie's facility.

142.    On December 12, 2020, APHIS employee Kelly Maxwell sent an internal message to other APHIS employees, stating, "Brian Lichirie[] . . . [h]andles the puppy part of Steve's business . . . ."

143.    On September 28, 2022, Kelly Maxwell emailed other several other APHIS employees stating, "The dogs are moved to a different license (Brian Lichirie) to whelp & the puppies are sold from that license & then the females are returned to Steve's license. So, Steve very rarely has any puppies during his inspections."

27

144.    On December 14, 2022, Kelly Maxwell stated in a declaration that "Mr. Lichirie is also one of Mr. Kruse's employees, and he is responsible for the whelping female dogs, caring for the puppies, and then selling them to the broker. Once the litters reach the appropriate weaning ages, Mr. Lichirie transfers the adult female dogs back to Mr. Kruse's facility." Kelly Maxwell additionally stated, "Mr. Lichirie. . . [was] the facility representative[] for these inspections [at Mr. Kruse's facility]."

145.    On December 28, 2023, Paige Johnson (another APHIS employee) took a photograph of a whiteboard during an inspection at Wuanita Swedlund's facility where she "keeps track of dog breedings and heat cycles." The whiteboard had notes next to the names of particular dogs, for example, a dog named snowball was at "Steve's place … Bred 2/12" and another dog named Ellie has a note next to it indicating "Brian 12-6, 12-9."

146.    Defendants issued a license to Brian Lichirie despite knowledge that Brian Lichirie was an officer, agent, or employee of Steven Kruse, and knowledge that Brian Lichirie participated in the activity warranting revocation of Steven Kruse's license.

147.    The AWA prohibits Defendants from issuing a license to any applicant who "[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4).

148.    Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of  5 U.S.C. § 706(2)(A), by issuing a license to Brian Lichirie, as Defendants had knowledge that Brian Lichirie was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

## COUNT FIVE

**(Defendants' failure to terminate Brian Lichirie's license, despite knowledge that he is agent of Steven Kruse, is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

149.    Paragraphs 1 through 148 are incorporated by reference as if fully set forth herein.

150.    Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are either "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "unsupported by substantial evidence."

151.    The AWA provides that "a license may be terminated for any reason that a license application may be denied pursuant to § 2.11." 9 C.F.R § 2.12.

152.    The AWA provides that a license will not be issued to any applicant who "[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4).

153.    After Defendants licensed Brian Lichirie, Defendants remained aware that Steven Kruse owned the surrounding property, and owned the dogs in Brian Lichirie's facility.

154.    On December 12, 2020, APHIS employee Kelly Maxwell sent an internal message to other APHIS employees, stating, "I actually did go to Brian Lichirie's (Handles the puppy part of Steve's business) . . . ."

155.    On September 28, 2022, Kelly Maxwell emailed other several other APHIS employees stating, "The dogs are moved to a different license (Brian Lichirie) to whelp & the puppies are sold from that license & then the females are returned to Steve's license. So, Steve very rarely has any puppies during his inspections."

156.    On December 14, 2022, Kelly Maxwell stated in a declaration that "Mr. Lichirie is also one of Mr. Kruse's employees, and he is responsible for the whelping female dogs, caring for the puppies, and then selling them to the broker. Once the litters reach the appropriate weaning ages, Mr. Lichirie transfers the adult female dogs back to Mr. Kruse's facility." Kelly Maxwell additionally stated, "Mr. Lichirie. . . [was] the facility representative[] for these inspections [at Mr. Kruse's facility]."

157.    On December 28, 2023, Paige Johnson (another APHIS employee) took a photograph of a whiteboard during an inspection at Wuanita Swedlund's facility where she "keeps track of dog breedings and heat cycles." The whiteboard had notes next to the names of particular dogs, for example, a dog named snowball was at "Steve's place …  Bred 2/12" and another dog named Ellie has a note next to it indicating "Brian 12-6, 12-9."

158.    Given these statements, Defendants remained aware that Brian Lichirie was an agent of Steven Kruse after issuing a license to Brian Lichirie.

159.    The AWA provides that Defendants should terminate a license where an applicant "[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4), 2.12.

160.    Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of  5 U.S.C. § 706(2)(A), by failing to terminate Brian Lichirie's license, as Defendants had knowledge that Brian Lichirie was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

## COUNT SIX

**(Defendants' decision to issue a license to Wuanita Swedlund, despite
knowledge that she is agent of Steven Kruse, is arbitrary, capricious,
an abuse of discretion, or otherwise not accordance with law in violation of
the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

161.   Paragraphs 1 through 160 are incorporated by reference as if fully set forth herein.

162.   Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are either "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "unsupported by substantial evidence."

163.   The AWA provides that a license will not be issued to any applicant who "[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4).

164.   At the time Defendants licensed Wuanita Swedlund, Defendants were that she was operating at a facility owned by Steven Kruse, and that the dogs in the facility were owned by Steven Kruse.

165.   On December 21, 2023, an inspection report from Defendants provided that "Dogs are regularly transported between this facility and [Steven Kruse's facility] without documentation."

166.   On December 28, 2023, Paige Johnson (another APHIS employee) took a photograph of a whiteboard during an inspection at Wuanita Swedlund's facility where she "keeps track of dog breedings and heat cycles." The whiteboard had notes next to the names of particular dogs, for example, a dog named snowball was at "Steve's place … Bred 2/12" and another dog named Ellie has a note next to it indicating "Brian 12-6, 12-9."

167.    On January 26, 2024, Robert Hensley wrote to Defendants stating that "As USDA is aware, Swedlund's operation is located . . . in Cantril, Iowa [and] is owned by Steve Kruse who holds a Class B license.. . . USDA knows that Kruse owns the land and dogs, and continues to control the business dealings of the Cantril operation; USDA staff routinely referred to Cantril as 'Steve's' or 'Kruse's' . . . ."

168.    Defendants issued a license to Wuanita Swedlund despite knowledge that Waunita Swedlund was an officer, agent, or employee of Steven Kruse, and knowledge that Wuanita Swedlund participated in the activity warranting revocation of Steven Kruse's license.

169.    The AWA prohibits Defendants from issuing a license to any applicant who "[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4).

170.    Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), by issuing a license to Wuanita Swedlund, as Defendants had knowledge that Wuanita Swedlund was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

## COUNT SEVEN

**(Defendants' failure to termiante Wuanita Swedlund's license, despite knowledge that she is agent of Steven Kruse, is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

171.    Paragraphs 1 through 170 are incorporated by reference as if fully set forth herein.

172.    Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are either

"arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or

"unsupported by substantial evidence."

173.    The AWA provides that "a license may be terminated for any reason that a license

application may be denied pursuant to § 2.11." 9 C.F.R § 2.12.

174.    The AWA provides that a license will not be issued to any applicant who "[w]as an

officer, agent, or employee of a licensee whose license has been suspended or revoked and who

was responsible for or participated in the activity upon which the order of suspension or revocation

was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4).

175.    On December 21, 2023, an inspection report from Defendants provided that "Dogs

are regularly transported between this facility and [Steven Kruse's facility] without

documentation."

176.    On December 28, 2023, APHIS employee Paige Johnson took a photograph of a

whiteboard during an inspection at Wuanita Swedlund's facility where she "keeps track of dog

breedings and heat cycles." The whiteboard had notes next to the names of particular dogs, for

example, a dog named snowball was at "Steve's place … Bred 2/12" and another dog named Ellie

has a note next to it indicating "Brian 12-6, 12-9."

177.    On January 26, 2024, Robert Hensley wrote to Defendants stating that "As USDA

is aware, Swedlund's operation is located  . . . in Cantril, Iowa [and] is owned by Steve Kruse who

holds a Class B license.. . . USDA knows that Kruse owns the land and dogs, and continues to

control the business dealings of the Cantril operation; USDA staff routinely referred to Cantril as

'Steve's' or 'Kruse's' . . . ."

178.    The AWA provides that Defendants should terminate a license where an applicant

"[w]as an officer, agent, or employee of a licensee whose license has been suspended or revoked

and who was responsible for or participated in the activity upon which the order of suspension or revocation was based, as set forth in § 2.9." 9 C.F.R. § 2.11(a)(4), 2.12.

179.    Defendants failed to terminate Wuanita Swedlund's license despite knowledge that she was an officer, agent, or employee of Steven Kruse, and knowledge that she participated in the activity warranting revocation of Steven Kruse's license.

180.    After licensing Wuanita Swedlund, Defendants remained aware that she was an agent of Steven Kruse, as she was operating at a facility owned by Steven Kruse, and that the dogs in the facility were owned by Steven Kruse.

181.    Defendants acted arbitrarily and capriciously, and with an abuse of discretion in violation of  5 U.S.C. § 706(2)(A), by failing to terminate Wuanita Swedlund's license, as Defendants had knowledge that she was an officer, agent, or employee of a Steven Kruse, whose license should have been revoked.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff American Society for the Prevention of Cruelty to Animals prays that the Court grant the following relief:

a.    Declare that Defendants' decision to issue a license to Steven Kruse on August 17, 2022 is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

b.    Declare that Defendants' failure to terminate Steven Kruse's license after August 17, 2022 is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

c.    Declare that Defendants' decision to issue multiple licenses to Steven Kruse and his agents is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

d.    Declare that Defendants' decision to issue a license to Brian Lichirie is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

e.   Declare that Defendants' failure to terminate Brian Lichirie's license is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

f.   Declare that Defendants' decision to issue a license to Wuanita Swedlund is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

g.   Declare that Defendants' failure to terminate Wuanita Swedlund's license is arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law.

h.   Award ASPCA its costs and reasonable attorney's fees in connection with this action, pursuant to 28 U.S.C. § 2412 and other applicable authority; and

i.   Grant such other relief as the Court deems necessary, just, and proper.


Dated: September 19, 2024                      Respectfully submitted,

                                               By:   */s/ Lynn Estes Calkins*
                                               Lynn Estes Calkins, Bar # 445854
                                               Rafe Petersen, Bar # 465542
                                               Sara J. Benson, Bar # 1767612
                                               HOLLAND & KNIGHT LLP
                                               800 17th Street, N.W., Suite 1100
                                               Washington, D.C. 20006
                                               Telephone: (202) 457-7041
                                               Email: lynn.calkins@hklaw.com
                                               Email: rafe.petersen@hklaw.com
                                               Email: sara.benson@hklaw.com